1  RONALD K. ALBERTS  (SBN:  100017)
   COURTNEY C. HILL  (SBN:  210143)
2  JESSICA WOLFF (SBN:  204635)
   GORDON & REES LLP
3  633 West Fifth Street, 52nd Floor
   Los Angeles, CA  90071
4  Telephone:  (213) 576-5000
   Facsimile:  (213) 680-4470
5  ralberts@gordonrees.com
   cchill@gordonrees.com
6  jwolff@gordonrees.com

7

8  Attorneys for Plaintiffs
   CONNECTICUT GENERAL
   LIFE INSURANCE COMPANY and
9  CIGNA HEALTH AND LIFE INSURANCE COMPANY

10                UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12

13  CONNECTICUT GENERAL LIFE          )  CASE NO. 13-CV-03726-CAS
    INSURANCE COMPANY, a Connecticut  )  (JCGx)
14  Corporation, and CIGNA HEALTH AND )
    LIFE INSURANCE COMPANY, a         )
15  Connecticut Corporation;          )
                                      )
16                   Plaintiffs,      )  **FIRST AMENDED**
                                      )  **COMPLAINT FOR**
17  vs.                               )  **RESTITUTION, INJUNCTIVE**
                                      )  **RELIEF AND**
18  LA PEER SURGERY CENTER, LLC, a    )  **DECLARATORY JUDGMENT**
    California limited liability company; )  **[ERISA SECTION 502(a)(3)];**
19  BABAK AZIZZADEH, an individual;   )  **FRAUD; and**
    BABAK LARIAN, an individual, and  )  **UNFAIR COMPETITION IN**
20  SIAMAK TABIB, an individual;      )  **VIOLATION OF BUSINESS &**
                                      )  **PROFESSIONS CODE § 17200**
21                   Defendants.      )
                                      )
22                                    )
                                      )
23                                    )
                                      )
24                                    )
                                      )
25  _____ )

26

27

28

                                  - 1 -                  13-cv-03726 CAS (JCGx)
    FIRST AMENDED COMPLAINT

Plaintiffs CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY (collectively "CIGNA") allege, upon personal knowledge and upon information and belief, as follows:

### SUMMARY OF ACTION

1.     In this action, CIGNA seeks to recover millions of dollars paid to La Peer Surgery Center, LLC ("La Peer") as a result of its scheme to defraud CIGNA by overbilling it for medical services allegedly provided to participants in health benefit plans insured and/or administered by CIGNA.  CIGNA also seeks injunctive relief to stop Defendant from continuing its wrongful conduct, which continues to injure CIGNA and these health benefit plans and the participants in those plans.  In short, La Peer's conduct amounts to nothing more than "health care profiteering" that victimizes Cigna, health benefit plans, and their participants on a regular and ongoing basis and increases health care costs exponentially for California consumers and employers.

2.     CIGNA serves as the claims administrator and, in some instances, the insurer of employee health benefit plans governed by ERISA ("ERISA Plans") that provide, among other benefits, reimbursement for covered medical expenses incurred by individual Plan participants and beneficiaries covered under the Plans ("Plan Members").  As discussed in detail below, pursuant to the terms of the ERISA Plans, Plan Members may select to receive medical treatment from "in-network" healthcare providers or "out-of-network" providers.  The ERISA Plans provide that Plan Members must pay more for the cost of medical care received from "out-of-network" providers, because members must contribute more to the cost of care for "out-of-network" services through the payment of higher levels of coinsurance, deductibles and other patient cost-sharing responsibility, than if Plan Members use in-network providers.  Obtaining "in-network" care is more cost effective because healthcare providers agree in advance with CIGNA (like other

- 2 -                              13-cv-03726 CAS (JCGx)

FIRST AMENDED COMPLAINT

1   insurers) to accept a discounted fee schedule for services, which enables more

2   controlled and predictable costs of medical care to the benefit of Plan Members,

3   who receive lower out of pocket expenses; to the benefit of employers who fund

4   the benefits through payroll deductions and contributions; and, where applicable,

5   to the insurer, who sets rates based upon the predicted expenses.  Defendants'

6   scheme, as further described below, severely undermines these benefits.

7         3.     While the ERISA Plans provide coverage for health care services

8   offered "out-of network," the ERISA Plans generally require the Plan Members to

9   pay a higher portion of the cost of "out-of-network" services through higher

10   copayments, deductibles, coinsurance and other cost-sharing amounts.  The

11   provisions of the ERISA Plans that require the Plan Members to pay higher

12   coinsurance, deductibles, and other portions of the "out-of-network" provider's

13   charges for services sensitize the Plan Member to the cost of his or her healthcare,

14   leading him or her to make cost-effective and thoughtful decisions not only to use

15   healthcare judiciously, but also to seek out providers with lower fees, thereby

16   making health insurance less expensive and reducing the unsustainable and

17   debilitating health care cost inflation being experienced by the entire healthcare

18   system.  In fact, "[s]tudies have shown that if patients are required to pay even a

19   small portion of their care, they will be better health care consumers, and select

20   items or services because they are medically needed rather than simply because

21   they are free." DHHS, OIG, Special Fraud Alert: Routine Waiver of Copayments

22   and Deductibles Under Medicare Part B (Issued May 1991).  The provisions of the

23   ERISA Plans that govern "out-of-network" services also help to control the cost of

24   health care and to protect and promote CIGNA's network of participating medical

25   providers, who have agreed to accept discounted rates in exchange for higher

26   patient volumes, by encouraging patients to use "in-network" services.  Because

27   Plan Members can obtain quality healthcare services from "in-network,"

28   participating providers at a substantially reduced out-of-pocket expense, they have

1    good reason to select "in-network" services rendered by participating providers.

2    Medical providers would have little or no reason to participate in CIGNA's

3    network (and to accept negotiated limits on their fees) if Plan Members could

4    obtain "out-of-network" services from non-participating providers without paying

5    copayments, deductibles, coinsurance, or other patient cost-sharing responsibility.

6        4.      As an integral part of their scheme, Defendants surreptitiously waive

7    the Plan Member's contractual cost-share responsibility under the ERISA Plans

8    and fail to disclose to CIGNA that Defendants have waived in full or in part the

9    Plan Members' deductibles, coinsurance, or other cost-sharing responsibility.

10   Defendants prevent the Plan Members from learning the exorbitant cost of the

11   services as billed, while also misrepresenting to CIGNA the amount they routinely

12   accept for the services provided.  Through this scheme, Defendants have reaped

13   millions of dollars in ill-gotten gains, while needlessly increasing the cost of

14   healthcare at the expense of California consumers and employers.

15       5.      For example, for a routine, diagnostic procedure like a common

16   colonoscopy, which costs on average approximately $650 if performed by one of

17   the surgical centers within CIGNA's provider network ("In-Network Providers"),

18   Defendants usually billed CIGNA approximately $14,000, or over 2,100% higher

19   than the average in-network reimbursement rate.  As billed to Cigna, La Peer's

20   charges would require a Cigna customer with an out-of-network, unmet deductible

21   of $3,000 to pay out of their own pocket more than four times as much as Cigna's

22   total average in-network reimbursement rate for the entire procedure.  By way of

23   further comparison, Medicare pays providers $432.00 for this routine diagnostic

24   procedure, thus meaning that La Peer charges 3,700% higher than Medicare.

25       6.      Similarly, for a routine, diagnostic procedure like an upper gastro-

26   intestinal  endoscopy, which costs on average approximately $650 if performed by

27   one of CIGNA's In-Network Providers, Defendants usually billed CIGNA

28   approximately $16,000, or over 2,400% higher than the average in-network

                                            - 4 -                13-cv-03726 CAS (JCGx)

FIRST AMENDED COMPLAINT

1   reimbursement rate.  Again, as billed to Cigna, La Peer's charges would require a

2   Cigna customer with an out-of-network, unmet deductible of $3,000 to pay out of

3   their own pocket more than four times as much as Cigna's total average in-network

4   reimbursement rate for the entire procedure.  Medicare pays providers $389.00 for

5   this routine diagnostic procedure, thus meaning that La Peer charges 3,500%

6   higher than Medicare.

7        7.      Defendants have fraudulently billed CIGNA millions in inflated

8   charges for procedures received by Plan Members.  Defendants' scheme is

9   fraudulent because, in submitting claims to CIGNA, Defendants misrepresent and

10  fail to disclose the actual amount of the charges for medical services provided.

11  Defendants' scheme also injures Plan Members and their employers sponsoring the

12  Plans by inflating, misrepresenting and failing to disclose the true cost of medical

13  services.  This action has serious implications beyond the parties.  The majority of

14  the ERISA Plans under which the Defendants submitted claims are administrative

15  services only ("ASO") plans sponsored and fully funded by the Plan Members'

16  employers.  Thus, certain funds CIGNA recovers on behalf of ASO plans will be

17  returned to the employers and not maintained by CIGNA.  Accordingly, CIGNA

18  brings its claims in this case not only to recover the overpayments Defendants

19  received, but also to restore the assets of the ASO ERISA Plans that CIGNA

20  administers as a fiduciary through its role as a claims administrator.

21       For the reasons set forth in more detail below, Defendants' scheme violates

22  the Employment Retirement Income Security Act ("ERISA"), is fraudulent under

23  California common law, and also is unlawful, unfair and fraudulent, in violation of

24  California Business & Professions Code, Section 17200, *et. seq.*  CIGNA, as the

25  claims administrator and fiduciary of the ERISA Plans at issue, is entitled to

26  compensatory damages, injunctive relief and restitution of Defendants' ill-gotten

27  gains.

28  / / /

FIRST AMENDED COMPLAINT

**JURISDICTION AND STANDING**

8.     The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331.  CIGNA sues for restitution, declaratory and other appropriate equitable relief.  CIGNA's claims arise under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  This Court has exclusive subject matter jurisdiction over these claims. 29 U.S.C. § 1132(e)(1).  As the claims administrator, CIGNA has sufficient discretionary authority and control regarding claims administration under certain provisions of the ERISA Plans to meet the statutory definition of "fiduciary" under ERISA.  ERISA Section 404(a)(1)(D) requires CIGNA, as the claims administrator and claims fiduciary of the ERISA Plans at issue in this Complaint, to administer the ERISA Plans in accordance with their terms and consistent with ERISA.

9.     ERISA Section 502(a)(3) provides that CIGNA may, as a fiduciary of the ERISA Plans through its role as the claims administrator, sue in federal court for injunctive and other appropriate equitable relief to enforce ERISA and/or the terms of the Plans and to redress violations.  CIGNA seeks to recover overpayments that were made under the ERISA Plans and do not fall within any safe-harbor provision.  Specifically, the majority of the ERISA Plans are employer-funded or fully insured group health benefit plans that identify the benefits available, the sources of financing, the procedures for obtaining benefits, and the beneficiaries' rights under the plans as governed by ERISA.  Further, CIGNA is a proper party to an action maintained under ERISA because CIGNA administers the ERISA Plans pursuant to written agreements with the plan sponsors, by which CIGNA has been delegated the discretionary authority to adjudicate claims for benefits under those Plans.

10.     Federal Courts have exclusive jurisdiction over actions brought under ERISA Section 502(a)(3). 29 U.S.C. § 1132(e).

/ / /

FIRST AMENDED COMPLAINT

13-cv-03726 CAS (JCGx)

11.     The Court has supplemental jurisdiction over the remaining common law and state law claims pursuant to 28 U.S.C. § 1367(a) (*see, e.g., Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 586-587 (S.D. Cal.2010) (supplemental jurisdiction over state claims where ERISA supplied basis for federal jurisdiction); *Stratton v. Glacier Ins. Adm'rs, Inc.*, 2006 U.S. Dist. LEXIS 85300, * 17-18 (E.D. Cal. 2006) (federal jurisdiction under sections 502(e)(1) and (f) of ERISA, and supplemental jurisdiction over related state law claims, pursuant to 28 U.S.C. § 1367(a)).

12.     In addition and as a separate and independent ground for jurisdiction, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and complete diversity exists between Plaintiffs (citizens of Connecticut) and Defendants (citizens of California).  (See infra ¶¶ 18-24.)

## VENUE AND INTRADISTRICT ASSIGNMENT

13.     Venue is appropriate in this judicial district and this division because the unlawful and fraudulent conduct alleged against Defendant occurred, and Defendant resides in this district.  29 U.S.C. § 1132(e)(2).

## PARTIES

14.     Plaintiffs CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY are Connecticut corporations with their principal place of business located in Bloomfield, Connecticut.

15.     CIGNA is a claims review fiduciary of certain employee health benefit plans ("ERISA Plans") as defined in ERISA Sections 3(1) and (3), 29 U.S.C. § § 1102(1) and (3).  As is relevant to the claims of this action, CIGNA always acts as a claims review fiduciary, either as a third party administrator of employer-sponsored and employer-funded group health benefit plans ("Self-Funded ERISA Plans"), or as an insurer of employer-sponsored group health

FIRST AMENDED COMPLAINT

1   benefit plans ("Insured ERISA Plans").  (The Self-Funded ERISA Plans and
2   Insured ERISA Plans are collectively referred to as "ERISA Plans.")  CIGNA
3   processes claims for reimbursement of medical benefits provided to the Plan
4   Members covered by the ERISA Plans.
5       16.     Defendant La Peer Surgery Center, LLC (hereafter "La Peer") is a
6   California limited liability company with its principal place of business located at
7   8920 Wilshire Boulevard, Suite 101, Beverly Hills, California 90211.
8       17.     On information and belief, Defendants Babak Azizzadeh
9   ("Azizzadeh"), Babak Larian ("Larian") and Siamak Tabib ("Tabib") are the co-
10  founders, managing members and principals of La Peer and operate from LaPeer's
11  principal place of business at 8920 Wilshire Boulevard, Suite 101 Beverly Hills,
12  California 90211.  Defendants Azizzadeh, Larian and Tabib are residents of the
13  State of California.  Defendant Azizzadeh is the registered agent for La Peer.
14      18.     At all times material and relevant hereto, Defendants were the agents,
15  partners, and/or employees of each other, were acting through their agents,
16  ostensible agents, servants and/or employees, including defendants Azizzadeh,
17  Larian and Tabib, and were at all times acting within the scope of their agency,
18  authority and employment.  Each of the Defendants has ratified and approved the
19  acts of his, her, or its agents, partners, and/or employees, and is responsible in
20  some manner for the occurrences alleged in the Complaint and the inequitable loss
21  of Plan assets as alleged in this Complaint.
22      19.     At all times material and relevant hereto, defendants Azizzadeh,
23  Larian and Tabin were acting as the agents, ostensible agents, servants and/or
24  employees of La Peer, and were acting within the scope of their authority and in
25  furtherance of the business of La Peer and under its control or right of control.
26  / / /
27  / / /
28  / / /

**GENERAL ALLEGATIONS**

A.   **The ERISA Plans**

20.    The ERISA Plans under which Plan Members are covered include written plan documents ("Plan Documents"), which provide reimbursement for the cost of covered health care services incurred by Plan Members ("Medical Benefits"). The Plan Documents govern whether any particular medical expense, including outpatient surgery expenses, is covered by the ERISA Plans and thus is reimbursable ("Covered Benefits"), and identifies exclusions and expenses not covered. The Plan Documents also set forth the extent to which Plan Members are responsible for a portion of the costs they incur for healthcare services through a copayment, coinsurance, deductible or other cost-sharing responsibility. The Plan Documents also govern claims assigned by Plan Members to "out-of-network" providers and then submitted to CIGNA by those "out-of-network" providers, such as Defendants, and CIGNA's right to recover overpayments made to them.

21.    For example, the Plan Documents provide the Plan Members with a description of the procedures, services, and supplies that are covered under the Plans or for which benefits are not available. Defendants had access to all of the information contained with the Plan Documents, including the information listed below, through their interaction and relationship with the Plan Members.

22.    The Plan Documents define "Covered Expenses" as, among other things, "expenses incurred by or on behalf of a person" for certain listed healthcare charges. In addition, the Plan Documents define "expense incurred" to mean "[a]n expense is incurred when the service or the supply for which it is incurred is provided."

23.    The Plan Documents also contain a summary of the exclusions, which include but are not limited to the following:

        a.    charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan.

13-cv-03726 CAS (JCGx)

b.  expenses for supplies, care, treatment, or surgery that are not Medically Necessary.

c.  to the extent that payment is unlawful where the person resides when the expenses are incurred.

d.  for charges which would not have been made if the person had no insurance.

e.  to the extent that they are more than the Maximum Reimbursable Charges.

24.  The Plan Documents also include a Schedule that identifies the amount that will be allowed for Covered Benefits, when provided by "in-network" providers and "out-of-network" providers. With respect to "out-of-network" providers, the Plan Documents provide that the ERISA Plans will allow a percentage of maximum reimbursable charges and that the Plan Members will be responsible for the difference between the amount paid by CIGNA under the ERISA Plans and the amount billed by the "out-of-network" provider.

25.  With respect to payment of covered Medical Benefits, the Plan Documents provide in relevant part, in the section entitled "Payment of Benefits," as follows: "To Whom Payable: All Medical Benefits are payable to you. However, at the option of CG [CIGNA], all or any part of them may be paid directly to the person or institution on whose charge [the] claim is based. [P] Medical Benefits are not assignable unless agreed to by CG. CG may, at its option, make payment to you for the cost of any Covered Expenses received by you or your Dependent from a Non-Participating Provider even if benefits have been assigned."

26.  The Plan Documents also provide that, for overpayments ("Overpayments") made to medical providers, including Defendants, "When an overpayment has been made by CG, CG will have the right at any time to: (a) recover that overpayment from the person to whom or on whose behalf it was made . . . ."

/ / /

- 10 -          13-cv-03726 CAS (JCGx)

FIRST AMENDED COMPLAINT

27.     The Plan Documents also provide, in relevant part, that "the Plan shall be entitled to invoke such equitable remedies as may be necessary to enforce the terms of the plan, including, but not limited to, specific performance, restitution, the imposition of an equitable lien and/or constructive trust, as well as injunctive relief."

**B.     The Defendants' Fraudulent Submission of Claims to CIGNA**

28.     As alleged above, La Peer is an out-of-network provider with whom CIGNA has no contractual relationship.  Based upon information and belief, La Peer routinely did not provide Plan Members an estimate of the charges for their upcoming medical procedures.  La Peer did not provide this information despite the fact that many of the medical procedures performed at La Peer were non-emergent, routine, diagnostic procedures for which La Peer submitted the same charges to Cigna over and over again.  In addition, La Peer also informed Plan Members that they only had to pay a certain, small amount for their procedure.  For example, Dr. Tabib and La Peer told Plan Member A that his/her insurance would cover everything for a procedure for which La Peer later submitted a claim for $33,600.00 to Cigna.  In reality, according to the terms of the applicable ERISA Plan, Member A was responsible for at least approximately $15,000.00.  Similarly, La Peer told Plan Member B that he/she only had to pay approximately $300.00 out of pocket for a procedure that La Peer later submitted a claim of at least approximately $86,000.00 to Cigna.  In reality, according to the terms of the applicable ERISA Plan, Member B was responsible for approximately $4,200.00.  Having induced Plan Members to use their services by promising a nominal out of pocket liability, if any, and failing to provide any estimate of potential charges, La Peer then had the Plan Members sign assignments of benefits, which included a clause about the Plan Members bearing full financial responsibility for the medical procedures, but which omitted any mention of La Peer's promise that the Plan Members only had to pay a nominal amount, if any, or any reference to price.

29.     Defendants have been billing CIGNA directly for services allegedly provided to Plan Members based on assignments received from Plan Members. Pursuant to the terms of the ERISA Plans, all Medical Benefits are payable to Plan Members unless CIGNA has agreed to make payment to a provider based on an assignment from the Plan Member.  CIGNA has received and paid approximately $4 million of such claims submitted by Defendants, based on such assignments, without knowledge that the claims submitted by Defendants were extraordinarily inflated and contained false representations and omissions regarding the actual charges incurred by Plan Members.

30.     As is typical in the healthcare industry, Defendants submitted claims to CIGNA using either a standard CMS-1500 health insurance claim form that requires providers to describe the services provided to members using a specific Current Procedural Terminology code (a "CPT Code") or a UB-04 or UB-92 form that requires the use of revenue codes for certain facility services.

31.     In submitting claims for reimbursement of such charges, as part of the scheme alleged, Defendants knowingly and intentionally misrepresented to CIGNA that the claim submissions to CIGNA were the actual, total charges for surgery, without disclosing that Defendants had waived in full or in part the Plan Member's copayment, deductible, coinsurance and/or other patient cost-sharing responsibility under the ERISA Plans.  Thus, the amounts Defendants routinely billed CIGNA were artificially and falsely inflated to amounts that were at least 20% -- 30% more than the amount actually incurred by Plan Members.

32.     Examples of inflated charges submitted by Defendants to CIGNA include:

  a.    La Peer submitted a claim to CIGNA for a colonoscopy (CPT 45380) and misrepresented its actual charge for its facility fee for this procedure as $14,000.  Based upon this misrepresentation, CIGNA was induced to pay $7,550.06 for the services.  The average payment to an in-network ASC in the same geographic area for these services is approximately $640.  The reimbursement

- 12 -                    13-cv-03726 CAS (JCGx)

induced by Defendant LSC's misrepresentation was 1180% higher than the average reimbursement for comparable in-network ASCs.

b.  La Peer submitted a claim to CIGNA for a proctosigmoidoscopy and lesion removal (CPT 45300, 46924) and misrepresented its actual charge for its facility fee for these procedures as $14,800.00 and $28,000.00 respectively, or a total of $42,800.00. Based upon this misrepresentation, CIGNA was induced to pay $32,520.00 for the services. The payment(s) to in-network ASCs in the same geographic area for these services is approximately $500.00 and $415.00 respectively. The reimbursement induced by Defendant LSC's misrepresentation was 3500% higher than the total reimbursement for comparable in-network ASCs.

d.  La Peer submitted a claim to CIGNA for a knee arthroscopy (CPT 29888, 29881, 29879) and misrepresented its actual charge for its facility fee for this procedure as $36,000.00, $23,300.00, and $22,700.00 respectively, or a total of $82,000.00. Based upon these misrepresentations, CIGNA was induced to pay $16,035.33 for the services. The average payments to an in-network ASC in the same geographic area for these services is $3,139.00, $2,488.00, and $1,176.00 respectively. The reimbursement induced by Defendant LSC's misrepresentation was 235% higher than the total average reimbursement for comparable in-network ASCs.

33.   Defendants did not disclose to CIGNA that they had waived in full or in part the Plan Members' copayments, deductibles, coinsurance or other patient cost-sharing responsibility under the ERISA Plans, as applicable. Defendants' charges are thus false, inflated, and unreasonable and do not reflect the cost of healthcare services actually incurred by Plan Members according to the terms of the ERISA Plans.

34.   When Defendants provided the medical procedures to Plan Members, they knew they were going to waive a portion, if not all, of the Plan Members' copayments, deductibles, coinsurance or other patient cost-sharing responsibility, yet Defendants submitted claims to CIGNA for payment of these charges containing false representations or omissions with the intent to mislead and induce CIGNA to pay higher amounts based on the inflated charges.

- 13 -                     13-cv-03726 CAS (JCGx)

35.     Under the ERISA Plans, CIGNA has no obligation to pay charges for services that are not actually incurred by, or charged to, Plan Members.  At any time Defendants communicated with CIGNA to verify benefits for Plan Members, CIGNA informed Defendants that claims submitted would be subject to all provisions of the ERISA Plans, including but not limited to patient responsibility provisions, eligibility requirements, exclusions and limitations, and that benefits would be determined on the basis of the facts existing when the services were rendered.

36.     CIGNA typically paid La Peer based upon and in reliance upon the false claims, and as a result La Peer received payments well in excess of the amounts due pursuant to the terms of the ERISA Plans.

37.     CIGNA continues to evaluate approximately $11 million in inflated claims fraudulently submitted by La Peer and conduct surveys of Plan Members who received services from La Peer.  Defendants' ill-gotten gains constitute assets of the ERISA Plans.

38.     CIGNA seeks restitution and return of all erroneous payments and overpayments of assets of the ERISA Plans.  CIGNA seeks return of specific, identifiable overpayments totaling millions of dollars that Defendants inequitably possess.  The precise amount to which CIGNA is entitled will be ascertained and subject to proof at trial.

## FIRST CAUSE OF ACTION

(Restitution and Other Appropriate Equitable Relief under ERISA Section 502(a)(3))

39.     CIGNA realleges and incorporates by reference Paragraphs 1 through 38 as though fully set forth herein.

40.     The ERISA Plans are employee health and welfare benefit plans that are insured or administered by CIGNA and for which CIGNA is the designated claim fiduciary.  The ERISA Plans and ERISA ASO Plans are non-governmental

1   plans that exist, are established, and maintained by employers for the benefit of

2   their respective employees, and do not fall within any ERISA safe-harbor

3   provisions.

4       41.    CIGNA has been delegated by the Plan Administrator of each of the

5   ERISA Plans the discretionary authority to review and make claims decisions for

6   benefits under the ERISA Plans.  As claims fiduciary for the ERISA Plans, CIGNA

7   has standing to sue under ERISA Section 502(a)(3) to obtain appropriate equitable

8   relief to redress violations of the ERISA Plans and/or to enforce the terms of the

9   ERISA Plans.

10       42.    As alleged above, Defendants have engaged in a scheme of submitting

11   fraudulent bills to CIGNA, pursuant to an assignment of benefits received from

12   Plan Members, claiming billed charges well in excess of the amounts that

13   Defendants expect to receive for those services.  Based upon the inflated claims

14   submitted to CIGNA and the assignments Defendants received from Plan

15   Members, Defendants received amounts in excess of the amounts they were

16   entitled to receive for those services incurred by Plan Members, as demonstrated

17   by the amounts Defendants collected, or failed to collect, in copayments,

18   deductibles, coinsurance and other patient cost-sharing responsibility from Plan

19   Members.

20       43.    CIGNA does not accept or pay benefit claims other than from Plan

21   Members, except that it does accept and pay claims submitted by providers who

22   have received assignments from CIGNA Plan Members.

23       44.    Defendants submitted claims of Plan Members of ERISA Plans

24   pursuant to contractual assignments received from those Plan Members.  By doing

25   so, Defendants stood in the shoes of the Plan Members, accepting the terms of the

26   ERISA Plans and submitting their claims subject to those terms.  The ERISA

27   Plans, by their terms, require the return of overpayments and amounts that were

28   erroneously paid.  By submitting assigned claims to CIGNA, Defendants agreed to

FIRST AMENDED COMPLAINT

1   CIGNA's lien on overpayments and erroneous payments and CIGNA seeks to

2   enforce those terms of the ERISA Plans against Defendants.

3       45.    As a result of the fraudulent scheme to inflate their charges and waive

4   in full or in part copayments, deductibles, coinsurance and other patient cost-

5   sharing responsibility, Defendants induced CIGNA on its own behalf and on behalf

6   of ERISA Plans to overpay each and every claim submitted by Defendants.

7   CIGNA is entitled to recover its overpayments and seeks restitution of the amounts

8   it overpaid which are within the possession and control of Defendants and are set

9   aside and preserved in La Peer's bank account, Account Number xxxxx1386 [the

10  full account number has been redacted in order to protect Defendants' privacy], at

11  EH National Bank, formerly known Excel National Bank, in Beverly Hills,

12  California.

13      46.    CIGNA is entitled to the imposition of a constructive trust on the

14  sums it paid to Defendants in reliance on the fraudulent claims Defendants

15  submitted to CIGNA, as well as on any profits or income made by Defendants

16  through the use of those amounts held in constructive trust.  CIGNA is also entitled

17  to an Order restoring to CIGNA the sums held in constructive trust by Defendants.

18      47.    An equitable lien, either implied or by agreement, exists on the

19  amounts CIGNA overpaid by fraudulent inducement, misrepresentation, or in error

20  to Defendants in reliance on the fraudulent claims based on the language in the

21  ERISA Plans requiring return of overpayments and amounts paid in error.

22      48.    Restitution and trust remedies include, among other things, return of

23  the amounts paid by CIGNA based on the fraudulent claims.  CIGNA seeks return

24  of specific monies paid to Defendants on behalf of the ERISA Plans that

25  constituted overpayments or erroneous payments.

26      49.    A majority of the claims at issue in this matter relate to the ERISA

27  ASO plans.  As a result, CIGNA's restitution claim seeks to restore the assets of

28  these ERISA ASO Plans it administers for the benefit of the employers sponsoring

1    such Plans and their Plan Members as CIGNA is required to do pursuant to the

2    agreement between CIGNA and the employers.

3                              **SECOND CAUSE OF ACTION**

4    (Declaratory, Injunctive and Other Appropriate Equitable Relief under ERISA

5                                    Section 502(a)(3))

6         50.    CIGNA realleges and incorporates by references Paragraphs 1 through

7    49 as though fully set forth herein.

8         51.    CIGNA has been delegated the duty to act as claims fiduciary for the

9    ERISA Plans by the Plan Administrators and has standing to sue under ERISA

10   Section 502(a)(3) to obtain appropriate equitable relief to redress violations of the

11   ERISA Plans or to enforce any provisions of the ERISA Plans.

12        52.    Defendants have engaged in a scheme to defraud CIGNA into paying

13   amounts to Defendants in excess of the amounts owed under the ERISA Plans.

14   Pursuant to their fraudulent scheme, Defendants have engaged in a custom and

15   practice of waiving in full or in part copayments, deductibles, coinsurance and

16   other patient cost-sharing responsibilities required to be collected under the ERISA

17   Plans.  As a result, the claims submitted to CIGNA are fraudulent as they state an

18   amount of billed charges for the surgical facility services rendered at significantly

19   higher rates than Defendants expect to collect or actually bill to Plan Members.

20   Based on the fraudulent claims submitted by Defendants, CIGNA has made

21   overpayments to Defendants.  Defendants have been paid, and still possess,

22   millions of dollars in ill-gotten gains and have been unjustly enriched as a result of

23   this fraudulent scheme.  CIGNA seeks restitution of the overpayments through

24   equitable lien and constructive trust remedies.

25        53.    CIGNA is entitled to a judicial declaration pursuant to ERISA Section

26   502(a)(3) enforcing the terms of the ERISA Plans and declaring that Defendants

27   are not entitled to any additional benefits payments from CIGNA or the ERISA

28   Plans unless and until they reimburse CIGNA and the ERISA Plans for all amounts

- 17 -                      13-cv-03726 CAS (JCGx)

FIRST AMENDED COMPLAINT

1    they wrongfully obtained as a result of their scheme to defraud CIGNA.

2        54.    CIGNA further seeks a declaratory judgment decreeing the right,

3    duties and obligations of the parties under the ERISA Plans.

4        55.    CIGNA also seeks an order enjoining Defendants from billing

5    CIGNA for amounts which do not reflect the collection of copayments,

6    deductibles, coinsurance and other patient cost-sharing responsibility under the

7    ERISA Plans, or in any other way artificially inflating amounts based upon their

8    business model of waiving in full or in part copayments, deductibles, coinsurance,

9    and other patient cost-sharing responsibility from CIGNA Plan Members.

10       56.    CIGNA also seeks a constructive trust or equitable lien on the monies

11   currently held by Defendants as a result of the overpayments by CIGNA, an order

12   restoring the overpayments currently being held by Defendants in constructive

13   trust or pursuant to an equitable lien, an accounting of the amounts received and

14   owed by Defendants, and other appropriate equitable relief.

15                        **THIRD CAUSE OF ACTION**

16              (Violation of Business & Professions Code Section 17200)

17       57.    CIGNA realleges and incorporates by reference paragraphs 1 through

18   56 as though fully set forth herein.

19       58.    Defendants' scheme of representing to patients that they would only

20   be responsible for a small or no portion of the amount charged while also

21   representing to CIGNA that the patients are responsible for the entire amount and

22   effectively waiving in full or in part Plan Members' copayments, deductibles,

23   coinsurance and other patient cost-sharing responsibility, and intentionally

24   inflating the claims submitted to CIGNA for payment as set forth above constitutes

25   unlawful, unfair and fraudulent business practices in violation of California

26   Business & Professions Code § 17200, et seq.  CIGNA has suffered and will

27   continue to suffer injuries as a result of Defendants' scheme, as described above.

28   / / /

                                    - 18 -              13-cv-03726 CAS (JCGx)

FIRST AMENDED COMPLAINT

59.     Defendants' business practices violate several California statutes. Defendants' scheme violates California Penal Code Section 550, which makes it unlawful to submit a false or misleading claim to an insurer for payment of a health care benefit, to provide false or misleading information in support of a benefit claim, or to conceal or knowingly fail to disclose an event that affects a person's entitlement to an insurance benefit or payment.

60.     Defendants' scheme of representing to Plan Members that they would only have to pay a small or no portion of the amount charged and failing to disclose the total amount that would be charged in order to coerce the Plan Members into obtaining services at Defendants' non-contracted facility violates California Civil Code, Sections 1770(a)(17) and 1667.

61.     Defendants' scheme is unfair because the waiver of copayments, deductibles, coinsurance and other patient cost-sharing responsibility in full or in part deprives CIGNA and Plan Members of material information concerning the actual cost of the medical services provided, encourages Plan Members to make uneconomical healthcare decisions, and prevents Plan Members from making fully-informed choices for treatment.  Defendants' scheme also is unfair to the detriment of the ERISA Plans for which CIGNA acts as claim administrator, fiduciary and/or insurer, by grossly increasing the costs of healthcare in the form of significantly higher premiums for the ERISA Plans and Plan Members. Defendants' business practices as alleged herein offend the established public policy of California, are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

62.     Defendants' scheme is fraudulent and likely to deceive because Defendants submit to CIGNA claims for benefits that fail to disclose and misrepresent the amount billed to Plan Members.  As alleged above, Defendants submit artificially inflated charges that constitute fraudulent billing.  Defendants knew the claims submitted to CIGNA were false, and Defendants submitted the

1   claims with the intent to defraud CIGNA.

2        63.   CIGNA reasonably relied upon Defendants' representations contained

3   in each fraudulent claim submitted by Defendants.

4        64.   As a direct and proximate result of Defendants' unlawful, unfair and

5   fraudulent business practices, Defendants have received money that rightfully

6   belongs to CIGNA or the ERISA Plans on whose behalf CIGNA acts as

7   administrator, fiduciary or insurer.  Pursuant to California Business & Professions

8   Code §§ 17200 and 17203, CIGNA is entitled to restitution of Defendants' ill-

9   gotten gains, and injunctive relief to enjoin Defendants from continuing their

10  unlawful, unfair and fraudulent business practices.

11       65.   Defendants knowingly made false representations of material fact to

12  CIGNA in submitting claims to CIGNA by either concealing and/or

13  misrepresenting the actual amount billed for services provided to Plan Members.

**FOURTH CAUSE OF ACTION**

(Fraud)

16       66.   CIGNA realleges and incorporates by reference paragraphs 1 through

17  65 as though fully set forth herein.

18       67.   At the time Defendants submitted claims to CIGNA, Defendants knew

19  the falsity of the representations in each claim.  Defendants knew the claims

20  submitted to CIGNA failed to disclose that Defendants had either intentionally

21  waived or not charged Plan Members in full or in part copayments, deductibles,

22  coinsurance, and other patient cost-sharing responsibility for the services provided

23  to Plan Members.  Defendants also knew that the claims submitted to CIGNA were

24  artificially inflated as a result of Defendants' scheme as alleged above.

25       68.   Defendants submitted the claims to CIGNA with the intent to induce

26  CIGNA to rely on Defendants' false representations and omissions alleged herein.

27  CIGNA reasonably relied on such false representations and omissions and, based

28  upon such reasonable reliance, CIGNA paid Defendants based upon the artificially

- 20 -                    13-cv-03726 CAS (JCGx)

1   inflated amounts submitted in the claims.

2       69.   As a result of Defendants' fraudulent conduct, CIGNA and the ERISA

3   Plans it administered have been damaged by paying Defendants based upon the

4   false and artificially inflated claims that Defendants submitted to CIGNA, in an

5   amount subject to proof.

6       70.   CIGNA is informed and believes, and on that basis alleges, that

7   Defendants acted intentionally and in conscious disregard of the rights of CIGNA

8   and the ERISA Plans, with malice, oppression, and fraud in that Defendants knew

9   that its acts and conduct, as alleged herein, were fraudulent and would result in

10  severe financial injury to CIGNA and the ERISA Plans.  CIGNA is entitled to an

11  award of punitive damages against Defendants in an amount to be determined at

12  trial.

13                        **PRAYER FOR RELIEF**

14      WHEREFORE, CIGNA prays for judgment as follows:

15      1.   For judgment in favor of CIGNA against Defendants on all causes of

16  action asserted in this Complaint;

17      2.   For an order restoring to CIGNA the overpayments it made to

18  Defendants, currently being held in constructive trust and/or equitable lien by

19  Defendants;

20      3.   For imposition of a constructive trust on the amounts CIGNA paid to

21  Defendants in excess of the amounts it actually charged for those services and

22  currently held by Defendants;

23      4.   For an equitable lien (implied or agreed) on the amounts CIGNA paid

24  to Defendants in excess of the amounts it actually charged for those services and

25  currently held by Defendants;

26      5.   For a declaratory judgment decreeing the rights, duties and obligations

27  of the parties under the ERISA Plans;

28  / / /

13-cv-03726 CAS (JCGx)

FIRST AMENDED COMPLAINT

1      6.     For entry of an injunction compelling Defendants to comply with the

2 terms of the ERISA Plans and prohibiting Defendants from billing CIGNA in

3 amounts in excess of what it actually charges for those services;

4      7.     For an order compelling Defendants to return to CIGNA the amount

5 of all excess payments, overpayments, and improper payments;

6      8.     For an accounting of the amounts collected by Defendants and owed

7 to Defendants;

8      8.     For compensatory damages in an amount to be proven at trial;

9      9.     For punitive damages;

10      10.     For pre and post-judgment interest in an amount to be proved at trial;

11      11.     For reasonable attorneys' fees and costs incurred by CIGNA in this

12 action; and

13      12.     For such other and further relief as this Court may deem just and

14 proper.

15 Dated: October 29, 2013          GORDON & REES LLP

16

17                     By:      s/Courtney C. Hill

18                        RONALD K. ALBERTS
                       COURTNEY C. HILL

19                        JESSICA WOLFF
                       Attorneys For Plaintiffs

20                        CONNECTICUT GENERAL LIFE
                       INSURANCE COMPANY and

21                        CIGNA HEALTH AND LIFE
                       INSURANCE COMPANY

22

23

24

25

26

27

28

1086473/17261398v.1

FIRST AMENDED COMPLAINT                        13-cv-03726 CAS (JCGx)