DARON L. TOOCH (State Bar No. 137269)
E-Mail: dtooch@health-law.com
GLENN E. SOLOMON (State Bar No. 155674)
E-Mail: gsolomon@health-law.com
MICHAEL S. HOUSKE (State Bar No. 218830)
E-Mail: mhouske@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California  90067-2517
Telephone: (310) 551-8111
Facsimile: (310) 551-8181

Attorneys for LA PEER SURGERY
CENTER, LLC and SIAMAK TABIB

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a Connecticut Corporation; and Cigna HEALTH AND LIFE INSURANCE COMPANY, a Connecticut Corporation,<br><br>            Plaintiffs,<br><br>vs.<br><br>LA PEER SURGERY CENTER, LLC, a California limited liability company, and SIAMAK TABIB, an individual,<br><br>            Defendants. | CASE NO. 13-CV-03726-CAS (JCGx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    June 2, 2014<br>Time:   10:00 a.m.<br>Dept.:   Hon. Christina A. Snyder<br>            Courtroom 5<br>            2nd Floor, Spring Street<br><br>Trial Date: None Set |

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1159385.1

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on June 2, 2014 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled court located at 312 North Spring Street, Los Angeles, California 90012, defendants La Peer Surgery Center, LLC and Siamak Tabib (collectively, "La Peer" or "Defendants") will and hereby do move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, this Court for an order dismissing with prejudice the Third Amended Complaint ("TAC") filed by plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company ("Cigna" or "Plaintiffs") on the grounds that the TAC fails to sufficiently allege facts that entitle Cigna to relief under any legal theory.

This case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Cigna has failed to allege any injury sufficient to confer standing under ERISA Section 502(a)(3) to pursue restitution claims on behalf of non-parties under Article III of the U.S. Constitution, and therefore, this Court does not have subject matter jurisdiction, requiring dismissal under Rule 12(b)(1) on those claims.

This case should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Cigna failed to allege a cause of action on which relief can be granted for the following reasons:

    1)     Cigna failed to allege facts sufficient to establish standing under ERISA and California's Unfair Competition Law, Business and Professions Code section 17200, *et seq.*;

    2)     Cigna failed to plead its exhaustion of ERISA's administrative process before filing this lawsuit;

    3)     Cigna failed to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure;

    4)     Cigna failed to plead actual reliance;

    5)     Cigna's state law claims are preempted by ERISA; and

1159385.1

1    6)      Cigna failed to allege any wrongful or fraudulent act.

2    This motion is made following the conference of counsel pursuant to Local

3    Rule 7-3, which took place on April 2, 2014.

4    This motion is made pursuant to Federal Rule of Civil Procedure Rules

5    12(b)(1) and 12(b)(6) and is based upon this Notice of Motion and Motion, the

6    supporting Memorandum of Points and Authorities, and all the pleadings and papers

7    on file herein, and such other matters as may be presented to the Court or otherwise

8    at or before the time of the hearing.

9

10   DATED: April 17, 2014                HOOPER, LUNDY & BOOKMAN, P.C.

11

12                                        By:*/s/  Michael Houske*
                                             MICHAEL S. HOUSKE
13                                        Attorneys for LA PEER SURGERY CENTER,
                                          LLC and SIAMAK TABIB
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**        **Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I.     INTRODUCTION ................................................................ 1

II.    ARGUMENT ..................................................................... 2

    A.   The Relief that Cigna Seeks Is Not Available Under 502(a)(3) ............ 2

    B.   Cigna Lacks Standing For Section 502(2)(3) Claim. ........................... 4

        1.   Cigna Lacks Statutory Standing for Section 502(2)(3) Claim ................................................................................. 4

            a.   Cigna Improperly Relies on ASAs and Not The Plan Language For Its Alleged Fiduciary Standing. ................. 4

            b.   The ASAs Do Not Delegate Authority To Cigna To Bring Section 502(a)(3) Claims. ........................................ 6

        2.   Cigna Lacks Article III Standing To Seek Restitution ................ 7

        3.   Cigna Also Lacks Standing To Bring California UCL Action Because Cigna Has Suffered No Injury In Fact. ............. 8

    C.   Cigna's ERISA Claims Must Be Dismissed Because Cigna Failed To Exhaust ERISA Administrative Requirements Prior To Filing ................................................................................. 10

    D.   Cigna Failed to Plead Fraud With Particularity. ................................... 16

    E.   Cigna Has Failed To Plead Justifiable Reliance. ................................. 18

    F.   Federal and California Law Both Permit La Peer To Negotiate Reduced Coinsurance. ....................................................................... 19

    G.   Cigna's State-Law Claims Are Preempted ........................................... 24

        1.   Complete Preemption ................................................................. 24

        2.   Conflict Preemption ................................................................... 24

III.   CONCLUSION ................................................................. 25

# TABLE OF AUTHORITIES                                           Page(s)

## FEDERAL CASES

*Almasi v. Equilon Enters, LLC*,
   2012 WL 3945528 (N.D. Cal. Sept. 10, 2013)................................................... 10

*American Federation of State, County and Municipal Employees*
   *District Council v. Bristol-Myers Quibb Co.*,
   948 F. Supp. 2d 338 (S.D.N.Y. 2013) ........................................................... 20, 21

*Auer v. Robbins*,
   519 U.S. 452 (1997) ........................................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 4

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
   683 F.3d 1083 (9th Cir. 2012) ........................................................................... 3, 4

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merk-Medco*
   *Managed Care*,
   433 F.3d 181 (2d Cir. 2005) ............................................................................... 7, 8

*Childers v. United of Omaha Life Ins. Co.*,
   2013 WL 683498 (S.D. W. Va. Feb 22, 2013)................................................... 5, 6

*Cigna Corp. v. Amara*,
   131 S. Ct. 1866 (2011)........................................................................................... 6

*Cleghorn v. Blue Shield of Cal.*,
   408 F.3d 1222 (9th Cir. 2005) ............................................................................. 24

*Curtiss–Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995) ................................................................................................ 5

*Diaz v. United Agric. Empl. Welfare Benefit Plan & Trus*t,
   50 F.3d 1478 (9th Cir. 1995) .............................................................................. 14

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
   777 F. Supp. 2d 869 (E.D. Penn. 2011)................................................................. 7

*Gladstone, Realtors v. Village of Bellwood*,
   441 U.S. 91 (1979) ................................................................................................ 7

*Great-West Life & Annuity Co. v. Knudson*,
   534 U.S. 204 (2002) .............................................................................................. 3

## TABLE OF AUTHORITIES (cont.)          Page(s)

*Harlick v. Blue Shield of Cal.*,
   686 F.3d 699 (9th Cir. 2012) ............................................................... 15

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ................................................................ 8

*Horvath v. Keystone Health Plan East, Inc.*,
   333 F.3d 450 (3d Cir. 2003) ............................................................... 7, 8

*Jarman v. Capital Blue Cross*,
   2014 WL 643613 (M.D. Penn. Feb. 19, 2014) ...................................... 3

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................. 16

*Kennedy v. Connecticut General Life Ins. Co.*,
   924 F.2d 698 (7th Cir. 1991) ............................................................... 21

*Leeson v. Transamerica Disability Income Plan*,
   671 F.3d 969 (9th Cir. 2012) ................................................................. 6

*Lujan v. Defenders of Wild-life*,
   504 U.S. 555 (1992) .............................................................................. 7

*Mellor v. Solomon Entities Defined Ben. Pension Plan*,
   2011 WL 4477322 (C.D. Cal. Sept. 26, 2011) .................................... 14

*Merling v. Horizon Blue Cross Blue Shield of N.J.*,
   2009 WL 2382319 (D.N.J. July 31, 2009) .......................................... 25

*Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No.*
   *427 v. Philco-Ford Corp., WDL Div.*,
   661 F.2d 776 (9th Cir. 1981) ............................................................... 16

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ............................................................. 16, 17

*Pennsylvania Chiropractic Ass'n, v. Blue Cross Blue Shield Ass'n*,
   2014 WL 51276585 (N.D. Ill. Mar. 28, 2014) ......................... 10, 11, 13

*Perlata v. Hispanic Business, Inc.*,
   419 F.3d 1064 (9th Cir. 2005) ............................................................... 4

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT

1159385.1

## **TABLE OF AUTHORITIES** (cont.)      <u>Page(s)</u>

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ................................................................... 24, 25

*Premier Health Center v. UnitedHealth Group*,
   292 F.R.D. 204 (D.N.J. 2013) .................................................... 13

*Schneider v. Chertoff*,
   450 F.3d 944 (9th Cir. 2006) ...................................................... 7

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
   88 F.3d 780 (9th Cir. 1996) ...................................................... 21

*U.S. Airways v. McCutchen*,
   133 S. Ct. 1537 (2013).............................................................. 5, 6

*Ebeid ex rel. U.S. v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ..................................................... 16

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
   546 F.3d 620 (9th Cir. 2008) ..................................................... 14

*Wirth v. Aetna U.S. Healthcare*,
   469 F.3d 305 (3d Cir. 2006) ...................................................... 12

*Wright v. General Motors Acceptance Corp.*,
   2013 WL 6137482 (9th Cir. Nov. 20, 2013) ............................... 9

### <u>State Cases</u>

*Amalgamated Transit Union v. Superior Court*,
   46 Cal. 4th 993 (2009)............................................................... 9

*California Ass'n of Psychology Providers v. Rank*,
   51 Cal. 3d 1 (1990)................................................................... 22

*Committee on Children's Television, Inc. v. Gen. Foods Corp.*,
   35 Cal. 3d 197 (1983) ............................................................... 17

*Epic Commc'ns, Inc. v. Richwave Tech., Inc.*,
   179 Cal. App. 4th 314 (2009).................................................... 9

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011).............................................................. 8, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1159385.1

**TABLE OF AUTHORITIES** (cont.)                    Page(s)

*Lazar v. Superior Court*,
  12 Cal. 4th 631 (1996) ........................................................................ 17

*People v. Brigham*,
  261 A.D.2d 43 (N.Y. Ct. App. 1999) ................................................ 19

*People v. Duz-Mor Diagnostic Laboratory, Inc.*,
  68 Cal. App. 4th 654 (1998) .............................................................. 23

**FEDERAL STATUTES**

29 U.S.C.

  § 1132(a)(3) ................................................................................... 3, 5

  § 1133(1) ........................................................................................... 14

  § 1133(1) & § 1133(2) ................................................................. 12, 14

  § 1133(2) ........................................................................................... 15

Employment Retirement Income Security Act

  § 502(a) ..................................................................................... 12, 15, 24

  § 502(a)(3) ................................................................................... *passim*

  § 514 .............................................................................................. 2, 25

  § 514(a) .......................................................................................... 24, 25

**STATE STATUTES**

Business and Professions Code

  § 650 ................................................................................................. 23

  § 657(b) and (c) .............................................................................. 22

  § 17200 ..................................................................................... 8, 9, 23

California Code of Civil Procedure

  § 338(d) ............................................................................................ 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1159385.1

## TABLE OF AUTHORITIES (cont.)          Page(s)

### RULES

Federal Rules of Civil Procedure

  Rule 9 ................................................................................ 16

  Rule 9(b) ...................................................................... 2, 16, 17

### FEDERAL REGULATIONS

29 C.F.R.

  § 2560.503–1 (b) ................................................................ 12

  § 2560.503–1 (m)(4) .......................................................... 11

  § 2560.503-1 (g)(i) ............................................................ 15

  § 2560.503-1 (g)(ii) ........................................................... 15

  § 2560.503-1 (g)(iii) .......................................................... 15

  § 2560.503-1 (g)(iv) ........................................................... 15

  § 2560.503-1 (g)(v)(A) ....................................................... 15

  § 2560.503-1 (h) ................................................................ 15

### STATE REGULATIONS

California Code of Regulations

  Title 10, § 2695.7(m) ......................................................... 23

### CONSTITUTIONAL PROVISIONS

Article III of the U.S. Constitution ...................................... *passim*

### OTHER AUTHORITIES

64 Ops. Cal. Atty. Gen. 782 (1981) ..................................... 22

Brief for the Secretary of Labor as Amicus Curiae, *Tri3 Enters., LLC
  v. Aetna, Inc*. (3d Cir. Nov. 30, 2012) ............................... 11

1159385.1

1
### MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.    INTRODUCTION

3
   Cigna purports to bring this action for damages on behalf of ERISA plans

4
seeking recovery of funds that the plans, not Cigna, paid to La Peer over some

5
unidentified time period.[1]   Not only are the allegations factually wrong - La Peer does

6
not routinely waive coinsurance - the Third Amended Complaint ("TAC") has several

7
defects that mandate dismissal of the action without any further leave to amend.

8
   First, the relief that Cigna seeks, which is nothing more than money damages,

9
is not available under ERISA Section 502(a)(3).

10
   Second, for most of the plans at issue, Cigna admits to only administering

11
claims for those plans.  Cigna did not use its own money to pay La Peer and any

12
damages it collects on such claims "will be returned to the employers and not

13
maintained by Cigna."  TAC ¶ 7.  If Cigna is seeking damages on behalf of the plans,

14
and not for itself, Cigna lacks standing under both federal and California law.

15
   •    Cigna failed to establish Article III standing to bring this action on

16
behalf of non-party ERISA plans because Cigna has suffered no "injury in fact."

17
   •    Cigna's Unfair Competition Law ("UCL") claim fails as California's

18
Proposition 64 requires dismissal of UCL claims if a plaintiff has not suffered injury.

19
Moreover, only consumers or competitors can bring a UCL claim.  Cigna is neither.

20
   Third, Cigna has still not establish it has fiduciary standing.  Fiduciary

21
authority is based on the <u>actual plan documents</u>, not Cigna's administrative services

22
agreements ("ASA") or even the summary plan descriptions for the plans.  Moreover,

23
even if the ASA language can support Cigna as a fiduciary, the delegated authority

24
does not include Cigna's pursuit of a claim under ERISA.

25

26
[1] Cigna's failure to give a time period is not surprising as most claims will be time barred.  La Peer

27
has only been paid sporadically since May 2010.  La Peer, in good faith, has continued to provide services to Cigna's members despite Cigna's refusal to pay on over 500 pre-authorized, medically

28
necessary surgery claims worth tens of millions of dollars.

1

1    Fourth, even if there were standing, Cigna's ERISA claims should be

2  dismissed as Cigna failed to exhaust the administrative process prior to filing.  For

3  adverse benefit determinations like recoupment, ERISA requires notice with a clear

4  explanation for seeking the recoupment and a full and fair review.  Cigna failed to

5  comply with these ERISA mandated requirements and did not notifying either La

6  Peer or Cigna's own members of any overpayment before filing.

7    Fifth, Cigna failed to plead fraud with specificity as required by Rule 9 of the

8  Federal Rules of Civil Procedures.  The TAC fails to specify the "who," "what,"

9  "where," "when" and "to whom" of any of the alleged fraudulent representations.

10    Sixth, Cigna has failed to allege reliance for its fraud claims.  Cigna alleges

11  that it paid La Peer's claims based on a schedule of Maximum Reimbursable Charges

12  ("MRC"), which Cigna admits is based on Medicare rates and not in reliance on La

13  Peer's billed charges or what La Peer did or did not collect from patients.

14    Seventh, Cigna's state law claims are preempted under ERISA Sections 502

15  (complete preemption) and 514 (conflict preemption).  The relief sought by Cigna's

16  state law claims is the same relief sought under its ERISA claims.

17    As to the substance of Cigna's allegations, even if La Peer did routinely waive

18  coinsurance, and **it did not**, negotiating of coinsurance payments between patients

19  and out-of-network providers is not fraud or an unfair business practice.  California

20  courts and the California Attorney General have held that discounting amounts owed

21  by patients does not constitute fraud.  In fact, California law mandates the negotiation

22  fees between doctors and patients.

23    For all of these reasons, the TAC should be dismissed without leave to amend.

24  II.    **ARGUMENT**

25    A.    **The Relief that Cigna Seeks Is Not Available Under 502(a)(3)**

26    Cigna alleges that it has standing to recover funds from La Peer by virtue of its

27  alleged status as a fiduciary under ERISA Section 502(a)(3).  TAC ¶¶ 26-29.  Section

28  502(a)(3), however, provides that "a participant, beneficiary, or fiduciary" may only

2

bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Fiduciaries may <u>not</u> bring actions for damages. *Id.*; *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1091 (9th Cir. 2012) (holding that "a plan fiduciary such as [insurer] can seek only 'equitable relief'" under Section 503(a)(3)).

Here, Cigna is seeking to impose personal liability and legal damages on La Peer, <u>not</u> a lien on specific property. It is well established that "*post hoc* monetary relief is unavailable under Section 502(a)(3)." *Jarman v. Capital Blue Cross*, No. 1:13-CV-0932, 2014 WL 643613, at *7 (M.D. Penn. Feb. 19, 2014). Rather, "traditional principles of equity [only] permit certain forward-looking financial directives." *Id.* (finding that ERISA precluded the plaintiff's 502(a)(3) claim for equitable remedies with respect to retrospective relief). As the Supreme Court has explained, "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West Life & Annuity Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988)).

Cigna tries to avoid this well-established stricture against retrospective money damages by couching its allegations in the guise of the equitable remedy of restitution. TAC ¶¶ 52-55. "However, not all relief falling under the rubric of restitution is available in equity." *Great-West*, 534 U.S. at 212. The Supreme Court has explained that "for restitution to lie in equity, the action generally must seek <u>not</u> to impose personal liability on the defendant, but to restore the plaintiff <u>particular funds or property</u> in the defendant's possession." *Id.* at 214 (emphasis added).

1   There are no plausible allegations that La Peer has preserved "particular funds

2  or property."  While Cigna states that overpayments are "set aside and preserved" in

3  a bank account (TAC ¶ 51), Cigna alleges no facts that make this conclusory

4  allegation even remotely plausible.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

5  564 (2007).  Why would La Peer or Dr. Tabib preserve funds paid by Cigna or

6  Cigna-administered plans back in 2010 or in any other year?  Why, during the last

7  four years, would La Peer not have used the funds in the ordinary course of

8  business?  Cigna failed to allege any facts to support this speculative allegation.

9  Because, in reality, Cigna is seeking to impose personal liability on La Peer, <u>not</u> a

10  lien on specific property.  The Ninth Circuit has explained numerous times that,

11  under these circumstances, no relief is available under Section 502(a)(3):

12  "[The insurer] is not seeking to recover a specified fund that is
   preserved and in [the defendants'] possession.  Instead, [it] is seeking a
13  judgment requiring [the defendants] to pay money out of her general
   assets.  In *Sereboff's* words, [the insurer] is seeking "the imposition of
14  personal liability," rather than enforcement of an "equitable lien on
   particular property."  This is quintessentially legal, rather than equitable
15  relief.

16  *Bilyeu*, 683 F.3d at 1094 (internal citations omitted); *Perlata v. Hispanic Business,*

17  *Inc.*, 419 F.3d 1064, 1075 (9th Cir. 2005) (noting the distinction between "equitable

18  claims that seek to prevent future losses, which are permissible under ERISA, and

19  those that seek past due sums, which are not").

20   In this case, Cigna is seeking a judgment requiring Defendants to pay money

21  out of their general assets.  Accordingly, it is not a claim for equitable relief, but

22  rather a claim for damages.  Accordingly, it should be dismissed.

23   **B.**   **Cigna Lacks Standing For Section 502(2)(3) Claim.**

24    1.   Cigna Lacks Statutory Standing for Section 502(2)(3) Claim

25     a.   Cigna Improperly Relies on ASAs and Not The Plan

26      Language For Its Alleged Fiduciary Standing.

27   This Court, in its order dismissing Cigna's second amended complaint,

28  required Cigna to show it has statutory standing to bring claims on behalf of the

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT

1  ERISA plans.  Cigna has failed to do so.  To bring this action under 502(a)(3) on

2  behalf of the non-party plans, Cigna is required to plead and prove that it is a

3  fiduciary for the plans.  29 U.S.C. § 1132(a)(3).  Cigna, however, does not cite to

4  any specific ERISA plan's language naming Cigna as a fiduciary.  On the contrary,

5  Cigna simply alleges it "administers plans as a fiduciary through its role as a claims

6  administrator" and submits sample language from Administrative Services

7  Agreements ("ASA"), and not the plans themselves, to support this conclusion.

8  TAC ¶¶ 26-29.  This is insufficient.

9       In *Childers v. United of Omaha Life Ins. Co.,* 3:12-0077, 2013 WL 683498, at

10  *14 (S.D. W. Va. Feb 22, 2013), the court examined plan documents and the ASA to

11  determine if Cigna was a fiduciary.  The court noted that the ASA between CIGNA

12  and CHH bears the disclaimer that:

13       Nothing herein contained shall be construed as making Administrator
     [CIGNA] or any of its officers or employees a fiduciary with respect to

14       the Plan, and Employer assumes responsibility for all liability resulting
     from breach of fiduciary duty under ERISA.  Administrator is not the

15       Plan Administrator as that term is used within ERISA, nor is
     Administrator authorized to accept service of process on behalf of the

16       Plan.

17  *Id.*  The *Childers* Court then examined if the Summary Plan Description ("SPD")

18  granted Cigna discretionary authority such that it could be considered a fiduciary.

19  The court found that "[t]his language vests in CIGNA authority to determine claims,

20  but it does not grant discretionary authority."  The court found that "[t]his language

21  compels the Court to conclude that by the terms of the ASA, CHH did not grant

22  CIGNA discretionary authority in the claims administration process."  *Id.*

23       Whether Cigna has statutory standing to bring a 502(a)(3) claim requires a plan

24  analysis.  The ERISA statutory scheme "is built around reliance on the face of written

25  plan documents."  *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995).

26  "Every employee benefit plan shall be established and maintained pursuant to a

27  written instrument" and the administrator must act "in accordance with the

28  documents and instruments governing the plan."  *U.S. Airways v. McCutchen*, 133 S.

1159385.1

1  Ct. 1537, 1548 (2013).  Not even the statutorily required SPD may be enforced as the

2  terms of the plan itself.  *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1877-78 (2011)

3  ("[W]e conclude that the summary documents, important as they are, provide

4  communication with beneficiaries about the plan, but that their statements do not

5  themselves constitute the terms of the plan . . .."  It is the plan language, not the ASA,

6  that controls ERISA claims.  *U.S. Airways*, 133 S. Ct. at 1548.

7      Cigna has not alleged any plan language.  Cigna allegations are based solely on

8  a few sample ASA agreements with the plans.  Accordingly, Cigna has not alleged

9  sufficient facts to establish that it is a fiduciary who has standing to bring this action.

10          b.      The ASAs Do Not Delegate Authority To Cigna To Bring

11                  Section 502(a)(3) Claims.

12      Even if Cigna could rely on the ASA language and not actual plan language,

13  the sample ASA language alleged by Cigna does not confer or delegate the authority

14  to Cigna to bring 502(a)(3) claims on behalf of the ERISA plans.  According to

15  Cigna, the ASAs allegedly provide that:

16      Employer hereby delegates to Connecticut General the authority,
        responsibility and discretion to (i) determine eligibility and enrollment
17      for coverage under the Plan according to the information provided by
        the employer, (ii) make factual determinations and to interpret the
18      provisions of the Plan to make coverage determinations on claims for
        Plan Benefits, (iii) conduct a full and fair review of each claim which
19      has been denied as required by ERISA, (iv) decide level one mandatory
        appeals of "Urgent Care Claims (as that term is defined in ERISA), and
20      (v) conduct both mandatory levels of appeal determinations for all
        "Concurrent", "Pre-service" claims (as that term is defined in ERISA)
21      and notify the Member or the Member's authorized representative of its
        decision.

22

23  TAC ¶ 26.  None of these five delegated duties includes the right for Cigna to bring

24  a 502(a)(3) claim.  This language is not sufficient to give Cigna statutory standing to

25  pursue a Section 502(a)(3) claim on behalf of the ERISA plans.  *Childers*, 2013 WL

26  683498, at *14.  As such, Cigna's ERISA claims should be dismissed for lack of

27  statutory standing.  *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d

28  969, 977 (9th Cir. 2012)(lack of ERISA standing is grounds for motion to dismiss).

2.      <u>Cigna Lacks Article III Standing To Seek Restitution</u>

"It is axiomatic that, in addition to those requirements imposed by statute, [ERISA] plaintiffs must also satisfy Article III of the Constitution." *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 455 (3d Cir. 2003); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("Congress may, by legislation, expand standing to the full extent permitted by Art. III . . . [but] [i]n no event, however, may Congress abrogate the Art. III minima: <u>A plaintiff must always have suffered 'a distinct and palpable injury to himself.'</u>"). (Emphasis added). Numerous courts have determined that, where an ERISA plaintiff seeks restitution and disgorgement under Section 502(a)(3), a showing of "individual loss" is required – mere allegations of fiduciary status are insufficient. *Horvath*, 333 F.3d at 456; *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merk-Medco Managed Care*, 433 F.3d 181, 200 (2d Cir. 2005) ("Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of <u>constitutional standing</u> by 'demonstrat[ing] individual loss.'")(emphasis added); *Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869 (E.D. Penn. 2011) ("To establish injury in fact on a claim of restitution or disgorgement in the ERISA context, a plaintiff must allege an individual loss.").

The "irreducible constitutional minimum of standing contains three elements: (1) injury in fact; (2) causation; and (3) likelihood that a favorable decision will redress the injury." *Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wild-life,* 504 U.S. 555, 560 (1992). Cigna has not alleged that Cigna suffered any loss as to ASA plans identified. TAC ¶ 7. With the ASA plans, Cigna only administers the claims for the ERISA plans and none of Cigna's money is used to fund the plan or pay claims for benefits -- the plans are "fully funded by the Plan Members employers." *Id.* Even if Cigna's allegations were true

7

1159385.1

1   (and they are not), any alleged injury that resulted from any alleged overpayments

2   was injury to the plans, and not to Cigna because it has admitted that it suffered no

3   injury or damages itself.  *Id.*  On the contrary, Cigna alleges that it is seeking to

4   recoup the funds on behalf of the plans and the "funds CIGNA recovers on behalf of

5   ASO plans will be returned to the employers and not maintained by Cigna."  *Id.*

6        Cigna does not have Article III standing as Cigna suffered no injury in fact as

7   to any claims for restitution on behalf of the plans and, therefore, Cigna lacks

8   standing to pursue such restitution claims against La Peer.  *Horvath*, 333 F.3d at 456;

9   *Cent. States Se. & Sw. Areas Health & Welfare Fund*, 433 F.3d 181 at 200.  This is

10  particularly true in a case like this where Cigna is seeking damages, as opposed to

11  prospective relief.  If an ERISA plan suffered damages, it must bring a claim in its

12  own name to satisfy the Article III standing requirements.  If a plan thinks it suffered

13  damages, it can bring such a claim only after exhausting the administrative process

14  required by ERISA.  Cigna itself has no Article III standing to bring such claims.

15            3.        Cigna Also Lacks Standing To Bring California UCL Action
                       Because Cigna Has Suffered No Injury In Fact.
16

17       Because Cigna has <u>not</u> suffered injury in fact with respect to the claims for the

18  self-funded ERISA plans for which it provides administrative services only, Cigna

19  also lacks standing to bring a claim under California's Unfair Competition Law

20  ("UCL").  Bus. & Prof. Code § 17200.  Proposition 64 amended California's UCL to

21  limit a party's right to sue to someone who has "suffered injury in fact and has lost

22  money or property as a result of unfair competition."  Cal. Prop. 64 §§ 2 and 3;

23  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  In *Hinojos v. Kohl's

24  Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013), the Ninth Circuit discussed the injury in

25  fact requirements under Article III and Proposition 64 as follows:

26       The "lost money or property" requirement therefore requires a plaintiff
         to demonstrate "some form of economic injury" as a result of his
27       transactions with the defendant, although "the quantum of lost money
         or property necessary to show standing is only so much as would
28       suffice to establish [Article III] injury in fact … (citations omitted).

1   In *Wright v. General Motors Acceptance Corp.*, No. 12-55319, 2013 WL

2   6137482 (9th Cir. Nov. 20, 2013), the Ninth Circuit suggested that the UCL

3   standing is even narrower than Article III standing:

4   A private suit may be brought under the UCL only "by a person who

5   has suffered injury in fact and has lost money or property as a result of
    the unfair competition." Cal. Bus. & Prof. Code § 17204.  Standing

6   under the UCL, in other words, is "substantially narrower" than
    standing under Article III of the Constitution, and a plaintiff suing

7   under the UCL must "(1) establish ... economic injury, and (2) show
    that that economic injury was the result of, i.e., caused by, the unfair

8   business practice ... that is the gravamen of the claim." (citations
    omitted).

9   Therefore, to have standing to bring a section 17200 cause of action, Cigna must

10  show that it suffered "a loss or deprivation of money or property sufficient to qualify

11  as injury in fact, i.e., economic injury." *Kwikset*, 51 Cal. 4th at 322.

12  Unlike its ERISA claim, Cigna cannot argue it has a statutory right to bring a

13  UCL claim for others.  The UCL allows a private party to bring an action on behalf

14  of others only if the person "has suffered injury in fact and has lost money or

15  property as a result of the unfair competition." *Amalgamated Transit Union v.*

16  *Superior Court*, 46 Cal. 4th 993, 1003-05 (2009) (holding a union could not bring

17  claims on behalf of members because union had not suffered injury in fact."

18  Nor can Cigna claim the plans assigned their rights to bring a UCL to Cigna:

19  To allow a non-injured assignee of an unfair competition claim to stand
    in the shoes of the original, injured claimant would confer standing on

20  the assignee in direct violation of the express statutory requirement in
    the unfair competition law, as amended by the voters' enactment of

21  Proposition 64, that a private action under that law be brought
    exclusively by a 'person who has suffered injury in fact and has lost

22  money or property as a result of the unfair competition.'

23  *Amalgamated*, 46 Cal. 4th at 1002, citing, Bus. & Prof. Code, § 17204.  Even if Cigna

24  alleged an agency relationship with the plans (which it has not), Cigna still would not

25  be the real party in interest.  *Epic Commc'ns, Inc. v. Richwave Tech., Inc.*, 179 Cal.

26  App. 4th 314, 333-34 (2009)("Nor does an agent ordinarily have a cause of action

27  based upon some third person's violation of its principal's rights.  Without some

28  breach of a duty owed to him, it has no power to sue on the principal's claim.").

9

1   Cigna admits that it is bringing its UCL claim on behalf of the ERISA Plans.

2   TAC ¶¶ 67, 70.  Cigna admits to performing only administrative services for those

3   self-funded ERISA plans, that the plans were "fully funded by the Plan Members

4   employers," and that "funds CIGNA recovers on behalf of ASO plans will be

5   returned to the employers and not maintained by CIGNA."  TAC ¶ 7.  While Cigna

6   alleges La Peer's conduct was unfair and harmed others (the ERISA plans, network

7   providers and patients), Cigna has not alleged that La Peer's conduct harmed Cigna.

8   Based on Cigna's allegations, Cigna cannot show that it has suffered injury in fact,

9   and therefore has no standing to bring the UCL claim on behalf of the ERISA Plans.

10   Moreover, on the facts alleged here, Cigna has failed to alleged facts to show

11   why it has standing to bring a UCL claim when Cigna is neither a consumer nor

12   competitor of La Peer.  *Almasi v. Equilon Enters, LLC*, 2012 WL 3945528, *9 (N.D.

13   Cal. Sept. 10, 2013) ("Plaintiffs have failed to provide any support for their

14   argument that they are able to bring UCL claim for unfair business practices despite

15   not being consumers and not being competitors.").

16   **C.    Cigna's ERISA Claims Must Be Dismissed Because Cigna Failed To**

17   **Exhaust ERISA Administrative Requirements Prior To Filing**

18   Cigna's ERISA claim must be dismissed because the recoupment of previously

19   paid benefits is an "adverse benefit determination" and Cigna must exhaust the

20   ERISA required administrative process in seeking the return of money it claims was

21   overpaid prior to initiating this action.  *Pennsylvania Chiropractic Ass'n, v. Blue*

22   *Cross Blue Shield Ass'n*, Case No. 09-C-05619, 2014 WL 51276585, *1, *14-16

23   (N.D. Ill. Mar. 28, 2014).  The TAC contains no allegations whatsoever that Cigna

24   exhausted or even tried to comply with the ERISA mandated administrative process.

25   It is undisputed that Cigna seeks recoupment of alleged overpayments to La

26   Peer.  TAC ¶ 44.  Under ERISA, seeking recoupment or restitution of previous paid

27   benefits constitutes an adverse benefit determination.  *Pennsylvania Chiropractic*,

28

10

1159385.1

1    2014 WL 51276585, at *13.  The ERISA regulations define "adverse benefit

2    determination" as any of the following:

> a denial, <u>reduction</u>, or termination of, or a failure to provide or make
> payment (in whole or in part) for, a benefit, including any such denial,
> reduction, termination, or failure to provide or make payment that is
> based on a determination of a participant's or beneficiary's eligibility to
> participate in a plan, and including, with respect to group health plans,
> a denial, <u>reduction</u>, or termination of, or a failure to provide or make
> payment (in whole or in part) for, a benefit resulting from the
> application of any utilization review, as well as a failure to cover an
> item or service for which benefits are otherwise provided because it is
> determined to be experimental or investigational or not medically
> necessary or appropriate.

9    29 C.F.R. § 2560.503–1(m)(4) (emphasis added).  In *Pennsylvania Chiropractic*,

10   after a full bench trial, the court found the insurer's "practice of withholding or

11   reducing payments to a provider when it determines that a previous payment was

12   made incorrectly therefore falls within the applicable regulation's definition of an

13   adverse benefit determination."  2014 WL 51276585, at *13.

14        The Department of Labor ("DOL"), which oversees the implementation and

15   regulation of ERISA, agrees.  The DOL has clarified that "the ERISA claims process

16   . . . applies" to cases like these, and before an overpayment can be recovered in

17   litigation, an ERISA claimant must first be afforded the "right to dispute a fiduciary-

18   administrator's plan interpretation through the claims procedure."  *See* Brief for the

19   Secretary of Labor as Amicus Curiae, *Tri3 Enters., LLC v. Aetna, Inc.* (3d Cir. Nov.

20   30, 2012) at section B.3 (available at http://www.dol.gov/sol/media/briefs/tri3-

21   enterprises(A)-11-30-2012.htm). (hereinafter "Tri3 Amicus Brief").  The DOL's

22   position is entitled to substantial deference.  *See, e.g., Auer v. Robbins*, 519 U.S.

23   452, 457 (1997) (granting deference to Secretary of Labor's interpretation of a

24   regulation on the rationale that "[b]ecause Congress has not "directly spoken to the

25   precise question at issue, we must sustain the Secretary's approach so long as it is

26   "based on a permissible construction of the statute") (internal quotations omitted).

27   Moreover, according to the Department of Labor:

28

> [i]t bears emphasis that the claims procedure applies to <u>all denials of benefits</u>, whether made initially or <u>after further review</u>, and whether the benefit was initially granted or denied on other grounds.  Where an insurer, for example, gives a new basis for a benefits denial on administrative appeal, such a new decision is subject to the claims procedure as if the appellate decision were an "initial denial."  *E.g.*, *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 236 (4th Cir. 2008); *Martin v. Hartford Life and Acc. Ins. Co.*, 478 F. App'x 695, 698 (2d Cir. Apr. 19, 2012).

Tri3 Amicus Brief, at section B.3.  In cases, like this one, where a plan seeks a reduction in benefits already paid, the dispute is rightly characterized as a dispute over benefits due under the plan, and the reimbursement demand is an "adverse benefits determination."  *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 308-09 (3d Cir. 2006) (recognizing that benefits are not fully recovered for the beneficiary when the plan seeks reimbursement).  Cigna is seeking to reduce benefits already paid, and for each claim Cigna is attempting to seek recoupment, it is an adverse benefit determination.

The ERISA statutes and regulations impose obligations on plans when adverse benefit determinations are made.  For example, every employee benefit plan must "maintain reasonable procedures governing . . . notification of benefit determinations, and appeal of adverse benefit determinations."  29 C.F.R. § 2560.503–1(b), 29 U.S.C. § 1133(1) & § 1133(2).  Notice of a denial of benefits is inadequate unless it is written and includes "specific reasons for such denial," including "[r]eference to the specific plan provisions on which the determination is based."  Id. § 2650.503–1(g)(i)–(ii).  The notice must include "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." Id. § 2650.503–1(g)(1)(iv).

The *Pennsylvania Chiropractic Association* shows that because recoupment is an adverse benefits determination, a medical provider, as an assignee standing in the shoes of the beneficiary, is entitled to notice and an opportunity to appeal an adverse benefit determination prior to being sued in court.  This case involved claims brought under ERISA by the Pennsylvania Chiropractic Association ("PCA") against

1  Independence Blue Cross ("IBC") for improper repayment demands for healthcare
2  services provided by PCA to patient members.  *Pennsylvania Chiropractic*, 2014 WL
3  51276585, at *2.  PCA alleged that IBC's repayment demands violated plaintiffs'
4  rights to adequate notice and full and fair review.  *Id.* at *7.

5     The *Pennsylvania Chiropractic* Court found that IBC's attempt to recoup
6  alleged overpayment from PCA was an adverse benefits determination that required
7  IBC to comply with the ERISA requirements of notice and full and fair review.  *Id.* at
8  *12-*15.  The court found that without notice and an explanation for a retroactive
9  benefit determinations and an adequate opportunity to challenge the denial through
10  appeal, IBC's practices did not substantially comply with ERISA.  *Id.*at *16.  Based
11  on its analysis and conclusions, the *Pennsylvania Chiropractic* granted an appropriate
12  permanent injunction in favor of PCA and against IBC, the exact contours to be
13  determine, to prevent IBC from ignoring its obligations to provide notice and full and
14  fair review under ERISA.  *Id.* at *18.

15     Similarly, in *Premier Health Center v. UnitedHealth Group*, 292 F.R.D. 204
16  (D.N.J. 2013), the court also held that United's recoupment notifications did not
17  comply with nor exhaust the ERISA regulations:

> The content of United's recoupment notification letters does, in fact,
> vary substantially. . . . However, **they all violate ERISA in three
> respects**.  First, they fail to provide "[a] description of the plan's
> review procedures and the time limits applicable to such procedures,
> including a statement of the claimant's right to bring a civil action
> under section 502(a) of [ERISA] following an adverse benefit
> determination on review."  29 C.F.R. § 2650.503–1(g)(1)(iv).25.
> Second, they fail to indicate that the provider, "upon request and free of
> charge, [will have] reasonable access to, and copies of, all documents,
> records, and other information relevant to the" overpayment
> determination.  29 C.F.R. § 2650.503–1(h)(2)(ii).  Third, they fail to
> "[p]rovide claimants at least 180 days following receipt of a
> notification of an adverse benefit determination within which to appeal
> the determination."  29 C.F.R. § 2650.503–1(h)(3)(i).26.

26  *Id.* at 224.

27     The doctrine of exhaustion serves several key functions, including "the
28  reduction of frivolous litigation, the promotion of consistent treatment of claims, the

13

provision of a non-adversarial method of claims settlement, and a proper reliance on administrative expertise." *Diaz v. United Agric. Empl. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995).  The requirement applies to fiduciaries seeking to bring suit to enforce term plans as well as to beneficiaries.  "Sound policy" requires the exhaustion doctrine to be enforced except where it is specifically excused.  *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008)(*citing Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)(identifying specific exceptions)).  Accordingly, when a plaintiff fails to exhaust an ERISA plan's administrative procedure prior to filing suit, the remedy is dismissal of the claim.  *Diaz*, 50 F.3d at 1485-86.  There is no rationale for deviating from the "sound policy" of imposing the exhaustion requirement equally on all ERISA plaintiffs.  The policy reasons underlying exhaustion are equally (if not more) applicable when a fiduciary seeks to bring an ERISA suit.  *Id.* at 1483.

Moreover, exhaustion must be sufficiently pled.  *Mellor v. Solomon Entities Defined Ben. Pension Plan*, No. CV 11-4396 CAS, 2011 WL 4477322, at *3-4 (C.D. Cal. Sept. 26, 2011)(dismissing claim because "[n]owhere in plaintiff's allegations does he claim to have filed a written request for a hearing" as required by the plan).

According to Cigna's allegations, the ERISA plans at issue have delegated to Cigna the duty to "(iii) conduct a full and fair review of each claim which has been denied as required by ERISA" and "(v) conduct both mandatory levels of appeal determinations for all "Concurrent", "Pre-service" claims (as that term is defined in ERISA) and notify the Member or the Member's authorized representative of its decision."  TAC ¶ 26.  Cigna is required to comply with the administrative notice and full and fair review requirement mandated by ERISA.  29 U.S.C. § 1133(1) & § 1133(2).  Cigna has not substantially comply with any of these ERISA requirements.  Cigna has failed even to allege that it tried to comply with any of the statutory or regulatory requirements:

1    •    Cigna did not allege giving La Peer "adequate notice in writing" of the

2    adverse benefit determinations prior to filing this action.  29 U.S.C. § 1133(1).

3    •    Cigna did not allege providing La Peer with "the specific reasons for

4    such denial."  29 C.F.R. § 2560.503-1 (g)(i).

5    •    Cigna did not allege identifying the specific provisions of the plan upon

6    which the adverse benefit determination was based.  29 C.F.R. § 2560.503-1 (g)(ii).

7    •    Cigna did not allege providing a description of any additional material

8    or information necessary for the claimant to perfect the claim and an explanation of

9    why such material or information is necessary.  29 C.F.R. § 2560.503-1 (g)(iii).

10   •    Cigna did not allege providing a description of the plan's review

11   procedures and the time limits applicable to such procedures, including a statement of

12   the claimant's right to bring a civil action under section 502(a) of ERISA following

13   an adverse benefit determination on review.  29 C.F.R. § 2560.503-1 (g)(iv).

14   •    Cigna did not allege telling La Peer whether the adverse benefit

15   determinations were based on an internal rule, guideline or other similar criterion, or

16   provide La Peer with a copy of any such rule.  29 C.F.R. § 2560.503-1 (g)(v)(A).

17   •    Cigna did not provide La Peer with a "full and fair review" of the

18   decision denying the claim."  29 U.S.C § 1133(2).

19   •    Cigna did not allege providing at least 60 days to appeal the adverse

20   benefit determination.  29 C.F.R. § 2560.503-1(h).

21   Cigna took none of these actions before filing this action to pursue alleged

22   overpayments.  Cigna did not even allege that they attempted to comply prior to

23   filing.  Because Cigna did not do so, this Court should dismiss the TAC without leave

24   to amend because Cigna cannot now allege it exhausted ERISA mandated

25   administrative procedures for adverse benefit determinations.[2]

26   _____

27   [2] Should the Court allow amendment, Cigna is not permitted to raise new reasons for its adverse
     benefits determination not raised in the administrative process.  *Harlick v. Blue Shield of Cal.*, 686

28   F.3d 699, 720 (9th Cir. 2012)(precluding insurer from "sandbag[ging]" beneficiary with rationale

### D. <u>Cigna Failed to Plead Fraud With Particularity.</u>

Cigna has failed to plead the requirements under Rule 9(b) of the Federal Rules of Civil Procedure to state a fraud claim against La Peer or Dr. Tabib.

Allegations of fraud, especially fraud allegations against individuals, are taken very seriously due to the devastating reputation repercussions that may ensue from simply be accused of committing fraud. Rule 9(b) serves three purposes: (1) provide adequate notice to defendants to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009).

According to the Ninth Circuit allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). A pleading is sufficient under Rule 9(b) only if it identifies the circumstances constituting fraud. *Id.* at 671-72. To state a viable fraud claim, "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* The plaintiff must specify "the who, what, when, where and how" of the alleged fraud and the "the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Moreover, in order to allege a cause of action for fraud, every element of the cause of action must be alleged, both factually and specifically. *Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776, 782 (9th Cir. 1981) (plaintiff

---

for denial raised for first time in litigation, if the rationale was not raised in administrative process).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT

1  "must state <u>the time, place and specific content of the false representations as well as</u>

2  <u>the identities of the parties to the misrepresentation</u>")(emphasis added).

3       California law also requires that for fraud claims, every element must be alleged

4  with particularity, including the specifics of the "who," "what," "where," and "when."

5  *Committee on Children's Television, Inc. v. Gen. Foods Corp*., 35 Cal. 3d 197, 216

6  (1983); *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996).  Moreover, the holding

7  in *Children's Television* <u>does not</u> relieve a plaintiff from pleading fraud with

8  specificity.  35 Cal. 3d at 218.  Rather, *Children's Television* allows a plaintiff to

9  plead representative fraud claims when hundreds of potential claims are alleged.  *Id.*

10  What *Children's Television* does not do is relieve a plaintiff from pleading those

11  representative samples with particularity as required under California law and Rule

12  9(b).  *Id.; Lazar*, 12 Cal. 4th at 645; *Neubronner*, 6 F.3d at 672.

13       In this case there has been no description of what representations were made, to

14  whom the alleged representation were made, when the alleged representations were

15  made, or how that person or Cigna or the non-party ERISA Plans relied on the

16  representation.  TAC ¶¶ 34-44.  The TAC is devoid of the detail required to allege

17  fraud under either federal or California law:

18    • Cigna claims that an unidentified person at La Peer at some unidentified

19       point in time made an allegedly fraudulent representation to "Plan

20       Member B," who was allegedly told that he/she would only have to pay

21       about $300 for his/her unidentified procedures.  Such a vague allegation

22       provides La Peer with no idea as to when the alleged representation was

23       made, who made it or how to prepare a defense to it.  TAC ¶ 34.

24    • The threadbare fraud allegations attributed to Dr. Siamak Tabib are

25       equally insufficient.  At an unidentified point in time, Dr. Tabib

26       allegedly told Plan Member A that the unidentified plan member's

27       insurance would cover everything for an unidentified procedure.  *Id.*

28

17

1        •  At another unidentified point in time, Dr. Tabib allegedly told Plan

2        Member C that having an unidentified procedure at La Peer would cost

3        the same as getting the procedure performed at an in-network facility.  *Id.*

4    Cigna's failure to provide dates in the TAC as to when alleged fraudulent acts

5    took place or when Cigna became aware of the alleged fraud is not surprising given

6    that Cigna has not paid La Peer on claims in over three years.  It is, however, critical

7    that Cigna provide La Peer with adequate notice of the dates for all alleged fraudulent

8    representations allegedly made by La Peer given that the statute of limitations on

9    fraud claims in California is three years from the date of discovery of the facts

10    constituting the fraud.  *Cal. Civ. Proc. Code* § 338(d).  Cigna has intentionally omitted

11    these dates in an attempt to plead around and avoid dismissal of all or most of its

12    claims based on this three year statute of limitation.

13        **E.**      **<u>Cigna Has Failed To Plead Justifiable Reliance.</u>**

14    Even taking all reasonable facts pleaded as true, Cigna did not rely on any

15    statements regarding whether La Peer collected copayments from patients or La

16    Peer's billed charges because as Cigna alleges, "the Plan Documents provide that the

17    ERISA Plans only allow for maximum reimbursable charges ["MRC"]."  TAC.  ¶ 23.

18    Cigna concedes that it calculates what it pays a provider independent of what a

19    provider charges or collects from patients.  *Id.*  Cigna determines this amount that it

20    will pay based on the MRC for out-of-network services, which is based on Medicare

21    rates, regardless of whether La Peer collects all or none of patients' coinsurance.  *Id.*

22    Although the Cigna's TAC does not define MRC, Cigna's website clarifies

23    how it determines "maximum reimbursable charges" and demonstrates that the level

24    of payment is the same *irrespective* of whether La Peer collected, waived or

25    discounted patient co-payments because Cigna determines the amount that it pays to

26    out-of-network providers *independently* from the billed charges submitted by those

27    providers. *See Reimbursement for Non-Network Providers*, http://www.cigna.com/

28    customer_care/healthcare_professional/medical/reimbursement_no_network_provide

1   r.html.  If La Peer were to submit inflated charges or misrepresent its actual billed

2   charges (which La Peer does not do), this has no effect on Cigna.  Cigna does not rely

3   on La Peer to collect coinsurance or on the amount of La Peer's billed charges, but

4   rather, Cigna relies on a Medicare-based MRC methodology, to pay claims.  *Id.*

5       A fundamental ploy of Cigna's complaint is to obfuscate what a provider

6   charges and what the insurance company pays.  Courts recognize this standard

7   practice.  In a criminal case in New York, the court recognized that a physician can

8   charge whatever rates he wanted to an insurance company because the insurance

9   company would calculate and pay what the company believed was reasonable.

10  *People v. Brigham*, 261 A.D.2d 43, 48 (N.Y. Ct. App. 1999).

11      In *People v. Brigham*, a doctor was convicted of defrauding insurance

12  companies based on alleged systemic overstating medical services fees based on his

13  waiver and reduction of patient coinsurance.  *Id.* at 45.  In reversing the conviction,

14  the court recognized that the insurance companies did not rely on what the physician

15  charged because the insurance companies would calculate what the insurance

16  company believed was reasonable.  *Id.* at 48.  The court held there was no fraud

17  perpetuated on the insurance companies, because billing the insurance companies

18  more than what the doctor charged the patient, and more than what the insurance

19  company considered reasonable, had no effect on the insurance company.  *Id.*

20      The same is true here.  Cigna calculates MRC regardless of whether La Peer

21  collects all of or some of or none of the copayment.  Cigna's MRC methodology for

22  reimbursing out-of-network providers does not depend upon how much the out-of-

23  network provider charges or how much the out-of-network provider collects from

24  patients.  Cigna has already determined how much Cigna will pay La Peer regardless

25  of whether La Peer negotiates with the patient as to the amount of the coinsurance.

26  **F.    Federal and California Law Both Permit La Peer To Negotiate**
27  **Reduced Coinsurance.**

28      A waiver of coinsurance by out-of-network medical providers does not

1  constitute fraud or unfair competition despite the TAC's assertions to the contrary.

2  Cigna's reference to a Medicare Fraud Alert is inapposite.  The claims here involve

3  private, self-funded ERISA plans and there are no allegations that the claims involve

4  Medicare or payments from Medicare.  (*See* concurrently filed Motion to Strike).

5        Simply put, other than Medicare, <u>there is no legal authority</u> supporting

6  Cigna's position that it is illegal or improper for non-contracted healthcare providers

7  to waive or discount co-payments for commercial patients.

8        This was recently explained in *American Federation of State, County and*

9  *Municipal Employees District Council v. Bristol-Myers Quibb Co.*, 948 F. Supp. 2d

10  338 (S.D.N.Y. 2013).  The plaintiffs' theory of misrepresentation in *American*

11  *Federation* was the same as alleged by Cigna.  Plaintiffs, which were self-funded

12  plans, alleged that defendants committed fraud by charging plans the full price for

13  drugs without disclosing that patients would not have to pay copays.  *Id.* at 347-48.

14  The court found that the plaintiffs' allegations could not support a claim for fraud

15  because there was no duty on the part of defendants to disclose the fact that they were

16  not requiring patients to pay copays.  *Id.*  The court explained:

17       The Complaint does not allege the existence of any contractual
18       relationship, or any other kind of relationship, between Defendants and
     any party that would require [Defendants] to disclose to [plaintiffs]
19       when a plan member uses a co-pay subsidy card provided by
     Defendants.  Nor does the Complaint allege that a pharmacy has a
20       contractual duty to collect less money from [plaintiffs] when a co-pay
     subsidy is used.

21  *Id.* at 347-48.  The court further explained:

22       Further, there is no active deception in the pharmacists' point-of-sale
     statements to [plaintiffs] that insureds have satisfied their co-pay
23       obligation—at least no more so than would be the case if an insured got
     the money to cover the cost from his rich uncle or a stranger on the
24       street, as opposed to his own pockets.  Thus, even by their own
     account, Plaintiffs have not received any records containing
25       misrepresentations of the sort that could ground a claim for fraud.

26  *Id.* at 347.  The same is true here.  There are no allegations that La Peer had any duty

27  to collect copayments, and there are no allegations that La Peer ever represented to

28

1159385.1

1    Cigna that patients had paid – or even would pay – any particular amounts.[3]

2        The *American Federation* court went on to distinguish the Ninth Circuit's

3    opinion in *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780

4    (9th Cir. 1996) and the Seventh Circuit's ruling in *Kennedy v. Connecticut General*

5    *Life Ins. Co.,* 924 F.2d 698 (7th Cir. 1991), as cases that "turned exclusively on the

6    nature and function of the <u>contracts at issue</u>." *American Federation*, 948 F. Supp.

7    2d at 349 (emphasis added).  The *American Federation* court concluded,

8        Although these opinions offer policy arguments in favor of a preference
for rules that secure co-pay schemes against effort to side-step them,

9    their analysis rests ultimately on the foundation of the contract.  <u>They
do not create any sort of general rule that routine and hidden waiver of</u>

10   <u>co-pays, even in the absence of a contractual obligation to enforce the
co-pay requirement, states a claim for fraud.</u>

11

12   *Id.* at 351 (emphasis added).

13       La Peer is an out-of-network provider that has <u>no contractual relationship</u> with

14   Cigna.  TAC ¶ 34.  There is no agreement whatsoever between Cigna and La Peer,

15   much less an agreement that La Peer must enforce any co-payment or deductible

16   requirements contained in Cigna's benefit plans.  The only contractual relationship is

17   between Cigna and Cigna's members, <u>not</u> Cigna and La Peer.[4]  In the absence of this

18   contractual agreement, there can be no fraud.

19       California law also holds that discounting or waiving a copayment is not

20   fraud or an unfair business practice.  In a well-reasoned Opinion, the Attorney

21   General found that out-of-network dentists who routinely waived coinsurance for

22   _____

23   [3]  Despite Cigna's allegations, La Peer does not regularly "waive" co-payments for Cigna's
members.  La Peer requires Cigna members to sign agreements to be financially liable for any fees

24   not paid by Cigna.  Although Cigna members are financially liable for the services provided by La
Peer, Cigna has stopped paying for the services provided to its members by La Peer.  As such,

25   Cigna's members, who pay more to Cigna for a health plan that permits access to out-of-network

26   providers, like La Peer, may be denied access to these out-of-network services as La Peer cannot
afford to provide services to Cigna members when there is no expectation of payment.

27   [4]  The contract between Cigna and its members does not create any duty on out-of-network

28   providers to collect co-payment.  The TAC contains no such allegations.

1    insurance companies with whom they were out of network did not commit fraud or

2    make false statements.  The California Attorney General stated:

> 3    We are asked whether that practice violates various California laws
> 4    relating to the making of false and fraudulent statements to obtain
>      advantage (i.e., laws against fraud and misrepresentation).  We are also
>      asked whether a dentist advertising that practice of waiver violates the
> 5    various California laws against false or misleading advertising.  **Our
>      answers to both questions are negative**.
>
> 7    We are first asked whether a dentist who claims a 'usual fee' in an
>      amount that does not take into account that he has waived the patient's
>      copayment under a policy of dental insurance which provides that the
> 8    insurance company will pay a fixed percentage of his 'usual fee', the
>      balance or copayment being paid by the patient, violates certain
> 9    California laws against fraud and misrepresentation.  . . . In connection
>      therewith it is suggested that the certification by a dentist to an
> 10   insurance company for payment that his 'usual fee' for a service is
>      $100 when in fact he only expects to be paid the $80 that the company
> 11   will pay as its 80 percent share of that amount (the $20 or 20 percent
>      patient copayment being waived) is false and fraudulent in that under
> 12   those circumstances the dentist's 'usual fee' is really the $80 expected
>      and not the $100 claimed. Thus it is contended the insurance
> 13   company's liability is $64 (20% of $80) and not $80 (20% of $100) and
>      the dentist's claim of a 'usual fee' in the amount of $100 thus defrauds
> 14   it of the $16 difference. <u>We do not</u> **agree with the suggested premise
>      or the extrapolated conclusion.**

16   64 Ops. Cal. Atty. Gen. 782, 782-783 (1981)(emphasis added).

17         The issues the Attorney General faced are exactly the same as the arguments

18   that Cigna is are trying to make here.  The dentists, like La Peer, were out-of-network

19   with the insurance companies.  (If the dentists were in-network, the copayment

20   amounts would have been based on the contracted rates, rather than on the dentists'

21   "usual fee.").  Attorney General opinions are "entitled to great weight" by California

22   courts and are considered "persuasive" where there is no controlling authority.

23   *California Ass'n of Psychology Providers v. Rank,* 51 Cal. 3d 1, 17 (1990).

24         California law further provides that health care providers can offer discounts

25   for prompt pay of claims or as party of a charity policies. Bus. & Prof. Code § 657(b)

26   & (c).  In California, the State Legislature has mandated that doctors are free to and

27   are encouraged to negotiate the cost of health care with their patients.  This is not

28   restrictive in any manner.  Therefore, any amount not paid by the patient cannot be

1  considered fraudulent and more importantly, any attempt by Cigna to frustrate

2  California Law on this issue should be deemed a violation of Public Policy.

3  The California Court of Appeal has held that it is permissible to offer discounts

4  to patients.  In *People v. Duz-Mor Diagnostic Laboratory, Inc.*, 68 Cal. App. 4th 654

5  (1998), the court held that a clinical laboratory's offer of discounts on tests for

6  physicians' private-pay patients did not violate criminal statutes prohibiting licensed

7  health care providers from offering discount or other consideration as compensation or

8  inducement for the referral of patients, clients, or customers.  It further held that the

9  practice did not violate Business and Professions Code section 650 and was not an

10  unfair practice under Business and Professions Code section 17200:

> 11  In our view, the practice of <u>negotiating discounts</u> for physicians'
> private-pay patients <u>benefits health care consumers.</u>  The lower prices
> 12  are by law passed on to consumers.  The evidence established that if
> discounts were not negotiated, private-pay patients would pay more for
> 13  services than Medi-Cal pays on behalf of its beneficiaries, or than
> HMO's pay on behalf of their members.  We can see no public policy
> 14  benefit in such a result.

15  *Duz-Mor*, 68 Cal. App. 4th 654, 663-664.  There is nothing illegal or unfair in offering

16  discounts on coinsurance and Cigna is wrong to assert otherwise.

17  If Cigna cannot prove fraud, it also cannot make a claim for overpayment under

18  California law.  Title 10, section 2695.7 of California's Code of Regulations provides:

> 19  No insurer shall make a payment to a provider, pursuant to a policy
> provision to pay medical benefits, and thereafter seek recovery or set-
> 20  off from the insured on the basis that the amount was excessive and/or
> the services were unnecessary, except in the event of a proven false or
> 21  fraudulent claim, subject to the provisions of Section 10123.145 of the
> California Insurance Code.

22

23  10 C.C.R. § 2695.7(m).

24  Unless Cigna proves that La Peer submitted false or fraudulent claims, it

25  cannot seek recovery of alleged overpayments.  Because California law holds that

26  the waiver or discounting of copayments is not fraud, even if La Peer did so (which

27  it did not), Cigna cannot legally make a claim based on the alleged overpayments

28  and the TAC should be dismissed without leave to amend.

### G.    Cigna's State-Law Claims Are Preempted

Cigna alleges that it is bringing state law fraud and UCL claims on behalf of ERISA Plans.  TAC ¶¶ 64-71, 73-76.  These state law claims are preempted under both prongs of ERISA's broad preemption scheme:

#### 1.    Complete Preemption

Any state cause of action within the scope of ERISA's comprehensive scheme of civil remedies under Section 502(a) is preempted.  *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).  *Cleghorn* held that a plan beneficiary's cause of action against the plan administrator under California's UCL was completely preempted because it sought to challenge coverage decision under the terms of the beneficiary's plan, and because the remedies sought (payment of his benefits) "conflicted with ERISA's exclusive enforcement scheme."  408 F.3d at 1226.

Likewise, Cigna's state law claims are coterminous with the relief sought under ERISA.  Cigna seeks the following relief under its UCL claim:  "Cigna is entitled to restitution of Defendants' ill-gotten gains, and injunctive relief to enjoin Defendants from continuing their unlawful, unfair and fraudulent business practices."  TAC ¶ 70.  In its fraud and UCL claims, Cigna is seeking precisely the same remedies in its First and Second Causes of Action under ERISA: restitution of money that belongs either to Cigna or to the ERISA plans administered by Cigna, and injunctive relief.  Because Cigna could have brought – and in fact did bring – these same claims under ERISA, they are completely preempted by ERISA.

#### 2.    Conflict Preemption

Cigna's state law causes of action are also subject to conflict preemption.  Under Section 514(a) of ERISA, if a state law claim "relates to" ERISA, then it is preempted.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987).  *Pilot Life* held that a plaintiff's state law claims against the ERISA plan administrator for tortious breach of contract, breach of fiduciary duties, and fraud in the inducement for the failure to pay benefits under the plaintiff's plan.  *Id*. at 43-44, 47.  Recognizing the

1  "expansive sweep" of Section 514 preemption, the Court declared that "[t]he phrase

2  'relate to' was given its broad common-sense meaning, such that a state law claim

3  'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection

4  with or reference to such a plan." *Id*. at 47.  The Supreme Court concluded that

5  "[t]here is no dispute that the common law causes of action asserted in Dedeaux's

6  complaint 'relate to' an employee benefit plan," and were preempted.  *Id.*.

7        There is no doubt that Cigna's claims for fraud and unfair competition "relate

8  to" the ERISA plans.  These claims explicitly seek restitution of alleged overpayments

9  on behalf of self-funded ERISA plans.  The TAC is clear that everything <u>is dictated</u>

10 <u>solely by the terms of the ERISA</u> plans, as is La Peer's alleged obligations to collect

11 co-payment amounts for their claims, and Cigna's rights to recover overpayments.  As

12 such, Cigna's fraud and unfair competition claims have a "connection to" or

13 "reference to" the ERISA plans because the terms of the plans are the basis upon

14 which Cigna contends that overpayments were made and may be recovered by Cigna.

15 *Merling v. Horizon Blue Cross Blue Shield of N.J.*, CIV. 04-4026, 2009 WL 2382319

16 (D.N.J. July 31, 2009) (state law claims seeking recovery of overpayment on behalf of

17 ERISA plan were preempted under Section 514 where the "central issue" was whether

18 particular claims were covered by the plan).  Cigna's state law claims are preempted

19 under Section 514(a).

20 III.   <u>CONCLUSION</u>

21        For the foregoing reasons, La Peer respectfully requests that the TAC be

22 dismissed without leave to amend.

23

24 DATED: April 17, 2014          HOOPER, LUNDY & BOOKMAN, P.C.

25

26                               By: */s/ Michael Houske*
                                 MICHAEL HOUSKE
27                               Attorneys for LA PEER SURGERY CENTER,
                                 LLC. and SIAMAK TABIB
28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, Suite 1600, Los Angeles, CA 90067-2517.

On April 17, 2014, I served true copies of the following document(s) described as **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

Ronald K. Alberts                          Connecticut General Life Insurance and
Courtney Culwell Hill                    CIGNA
Jessica Wolff
GORDON & REES LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Tel: (213) 576-5000
Fax: (213) 680-4470
ralberts@gordonrees.com
cchill@gordonrees.com
iwolff@gordonrees.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 17, 2014, at Los Angeles, California.


*/s/ Griselda Rodriguez*
Griselda Rodriguez

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT